

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

805 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

December 21, 1984

Honorable Wilhelmina Delco
Chairman
Higher Education Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78769

Opinion No. JM-267

Re: Whether foreign nationals may be constitutionally charged a higher rate of tuition at a state university than other nonresidents

Dear Representative Delco:

You have requested an opinion from this office regarding the constitutionality of different rates of tuition at Texas public institutions of higher education based on national origin. Your concern is whether the state may constitutionally charge a rate of tuition at such institutions to one class of students who are not Texas residents while charging a higher rate of tuition to another class of students, who also are not Texas residents, simply because the latter class is composed of foreign nationals and the former class is composed of United States citizens. You have not submitted a specific proposal or draft, and thus, we will discuss the question in the abstract.

The Education Code provides different rates of tuition for students who are residents of Texas and for students who are not residents of Texas. Our discussion is limited to students who do not qualify for the Texas resident tuition. Presently, the Education Code provides that tuition for students who are citizens of any country other than the United States is the same as tuition required of other nonresidents of Texas who are citizens of the United States. See Educ. Code §54.051, subsecs. (b), (c), (h), (i).

The Fourteenth Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. The amendment speaks of "persons" rather than "citizens." It has long been settled that the guarantee of equal protection extends to all persons within the territorial jurisdiction of a state irrespective of citizenship. See Ambach v. Norwick, 441 U.S. 68 (1979); Yick Wo v. Hopkins, Sheriff, 118 U.S. 356 (1886). An alien who is present within the boundaries of the state is a person within the jurisdiction of the state. See Plyler v. Doe, 457 U.S. 202 (1982); reh'g denied, 458 U.S. 1131 (1982).

The *equal protection clause does not prohibit all legislative*
classifications. In reviewing legislation under the equal protection
clause, the Court's usual approach has been a two-tiered standard. If
a statute infringes on a fundamental right or creates an inherently
suspect classification, the statute is subject to strict judicial
scrutiny which requires the state to establish a compelling interest
in its enactment. To do so, the state must demonstrate that its
purpose or interest is both constitutionally permissible and
substantial and that its use of the classification is necessary to
accomplish its purpose. See In re Griffiths, 413 U.S. 717 (1973). If
*a statute does not affect a fundamental right or create a suspect*
classification, the statute is accorded a presumption of
constitutionality that is not disturbed unless the enactment rests on
grounds wholly irrelevant to the achievement of a legitimate state
objective. The latter standard frequently is referred to as the
rational basis test. See McGowan v. Maryland, 366 U.S. 420 (1961). A
person challenging a classification judged by the rational basis test
must establish that the classification does not bear a fair
relationship to a legitimate public purpose, whereas a state must
justify a suspect classification by showing a compelling state
interest. See Plyler v. Doe, supra.

The United States Supreme Court has found classification based on
race or alienage inherently suspect and subject to strict judicial
scrutiny. See In re Griffiths, supra; Sugarman v. Dougall, 413 U.S.
634 (1973); Graham v. Richardson, 403 U.S. 365 (1971); Arredondo v.
Brockette, 648 F.2d 425 (5th Cir. 1981). We do not believe that your
question requires a determination of the appropriate standard by which
the courts would test the constitutionality of the tuition rates that
you describe. It is our opinion that the rates in question would not
pass either test. The constitutionality under the equal protection
clause of each statute is judged on its individual provisions and
facts, but we are not aware of Texas interests which we believe the
courts would find to be a rational justification for enacting higher
tuition rates for foreign nationals than for United States citizens,
neither of which qualify for Texas resident tuition. Cf. Plyler v.
Doe, supra.

It is our judgment that, in the absence of a rational basis for
such a distinction, a court would hold that discrimination against one
group solely because it is composed of aliens would be arbitrary and
unreasonable. In 1982, the office of the Attorney General of
Tennessee was asked whether it is constitutional to assess different
fees for public colleges based on a student's national origin. The
Attorney General of Tennessee determined that such aliens would be
considered by the courts to be a suspect class under the equal
protection clause. See Attorney General of Tenn. Opinion No. 82-194
(1982). The opinion states that

> When a suspect class is involved, the classi-
> fication is 'inherently suspect and subject to
> close judicial scrutiny.' Graham v. Richardson,
> supra, 403 U.S. at 172. As a general proposition,
> this office is not aware of any circumstances
> which would compel the state to set a different
> fee rate for alien students than for other
> out-of-state students. In the absence of such a
> compelling purpose, the Fourteenth Amendment would
> be contravened.

This office, too, has stated that restrictions based on alienage cannot be upheld unless the state can prove that the restriction is necessary to accomplish a compelling state purpose. Attorney General Opinion H-1140 (1978) (unconstitutional to restrict license as Private Employment Agency operator to citizens of the U.S.).

In addition to the Fourteenth Amendment of the United States Constitution, the Constitution of Texas guarantees equality of rights to all persons. See Tex. Const. art. I, §3. Article I, section 3a specifically declares that equality under the law may not be denied or abridged because of sex, race, color, creed, or national origin.

Your inquiry raises other issues in addition to the issue of equal protection. For instance, no state may conduct an independent foreign policy. It has long been settled that the United States is a single nation for purposes of foreign affairs. See Chae Chan Ping v. U.S., 130 U.S. 581 (1889). The power to deal with foreign nations rests in the president, who conducts our foreign relations through the State Department, ambassadors and consuls, and others whom he appoints. U.S. v. Hooker, 607 F.2d 286, 289 (9th Cir. 1979), cert. denied, 445 U.S. 905 (1980). We do not believe that the courts would allow a state statute to subtly affect international relations or national foreign policy. See Zschernig v. Miller, 389 U.S. 429 (1968). Congress has the exclusive power to control immigration and the admission of aliens to the United States, and a state may not impose immigration controls on aliens that the federal government has chosen to admit. In Attorney General Opinion H-157 (1973), this office said that

> The power to control immigration is vested
> solely in Congress. Fong Yue Ting v. U.S., 149
> U.S. 698, 713 (1893). The statutory scheme
> enacted by Congress is pervasive, and a state may
> not enact statutes or regulations which curtail,
> interfere with or conflict with the comprehensive
> Congressional program. Hines v. Davidowitz, 312
> U.S. 52 (1941).

A state may, in appropriate circumstances, limit the participation of noncitizens in the state's political and governmental functions. See Toll v. Moreno, 458 U.S. 1, Footnote 17 (1982), and cases cited therein. It is our opinion, however, that if challenged, a state law which charges a higher rate of tuition at state universities to foreign nationals than the rate charged other nonresidents of Texas would not be upheld by the courts.

## S U M M A R Y

A state law which charges a higher rate of tuition at state institutions of higher education to foreign nationals than the rate charged other nonresidents of Texas would raise serious constitutional issues, such as the issue of equal protection under the Fourteenth Amendment to the United States Constitution and under the Texas Constitution and interference with the federal government's exclusive right to control foreign policy and the immigration and admission of aliens to the United States.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton